UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARNIE GELLER, DR. HONJIN SUI,
DALIAN HOFFEN BIO-TECHNIQUE CO. LTD.,
AND DALIAN MEDICAL UNIVERSITY
PLASTINATION CO. LTD.

CASE NO. 8:10-CIV-1688-EAK-AEP

Plaintiffs,

v.

GUNTHER VON HAGENS,
PLASTINATION COMPANY, INC. and
INSTITUTE OF PLASTINATION

Defendants.
_____/

## ORDER ON DEFENDANT PLASTINATION COMPANY INC'S MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendant Plastination Company Inc's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 22) in accordance with the Federal Rule of Civil Procedure 12(b)(6). The other Defendant filed a Motion to Dismiss (Doc. 40), adopting the same arguments as this Motion. The Court finds the same rulings apply. For the reasons set out below, the Motion is denied in part and granted in part. The jurisdictional issues can be reasserted after the filing of the ordered amended complaint.

**I.    BACKGROUND**

Arnie Geller, Dr. Honjin Sui, Dalian Hoffen Bio-Technique Co. Ltd. and Dalian Medical University Plastination Co., Ltd. (collectively "Plaintiffs") brought this suit against Dr. Gunther von Hagens, Plastination Company, Inc. and the Institute of Plastination (collectively "Defendants"). Pursuant to 28 U.S.C. §§1332, 1441 and 1446, this case was removed from the

Circuit Court for the Thirteenth Judicial Circuit in Hillsborough County, Florida, to the Middle District of Florida on diversity grounds.

The parties to this suit are involved in the business of preserving and exhibiting plastinated bodies. Von Hagens and Plastination Company Inc. (Plastination) are involved in the production and operation of "Body Worlds," which is a traveling exhibit showing plastinated bodies. Plaintiff Geller was President, CEO and Chairman of another company, Premier, which, like Defendant Plastination, was involved in the production and operation of another traveling exhibit showing plastinated bodies—the "Bodies Exhibition." Accordingly, Plastination and Premier were each other's direct competitors.

Overall, there are several companies operating in the trade.[1] The business is quite a profitable one, and it is reported that Premier alone made about $14.5 million from 10 touring Bodies shows in the third quarter of 2007.[2]

On February 15, 2008, a nationally televised "investigative news story" (the "Broadcast") aired, and, the Plaintiffs allege published inflammatory and false statements about Plaintiffs. As a result, Plaintiffs maintain that they were injured in their profession, trade, and business reputation. The Plaintiffs further assert that the statements were made by Defendants' former agent or employee and that the source of the allegedly defamatory statements and information in the Broadcast was von Hagens.

Contrary to the Plaintiffs' assertions as to the harm suffered, it is reported that in the wake of the Broadcast, attendance of the "Bodies Exhibition," at least at the Carnegie Science Center, held steady.[3]

---

[1] Plaintiffs' Exhibit A, Document 11–1, p. 9
[2] Plaintiffs' Exhibit A, Document 11–1, p. 10
[3] *Id.*

An investigation of Premier was started by New York Attorney General Cuomo's office. In May 2008, Premier reached a settlement with the Attorney General's office, according to which Premier had to state clearly on its website that it could not disprove the allegations that bodies on display came from China, from executed prisoners.[4]

In their Amended Complaint, Plaintiffs set out six specific and allegedly defamatory statements that were aired both on the Broadcast and published on the internet, and for which von Hagens was allegedly the source: (1) the bodies for the Bodies Exhibition were purchased on China's "black market," and were bodies of tortured, abused and executed Chinese prisoners; (2) dealers made "body runs" to the "black market" and purchased bodies of executed prisoners for $200–300; (3) the bodies were located in a rundown warehouse in northern China; (4) von Hagens stated it was quite normal that executed prisoners were used for anatomical purposes in China; (5) the bodies were obtained illegally; and (6) the bodies which were either obtained from the "black market" or otherwise illegally obtained were used in the Bodies Exhibition.

Plaintiffs allege these statements were made with the intent to economically harm them. Because, according to Plaintiffs, von Hagens was the source of the statements, the companies-Defendants (Plastination and Institute of Plastination) are vicariously liable for von Hagens's statements. Based on the Broadcast, Plaintiffs are suing Defendants on three counts: (1) defamation; (2) tortious interference; and (3) civil conspiracy.

## II. PROCEDURAL POSTURE

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). Because in this case the Court is sitting in diversity, Florida state law of defamation, tortious interference and civil conspiracy will be applied. Procedural law as it relates to pleading standards in federal court will be

---

[4] Plaintiffs' Exhibit A, Document 11—1, p. 12

analyzed with reference to the two most recent cases of *Ashcroft v. Iqbal*[5] and *Bell Atlantic Corporation v. Twombly*[6].

At the outset it should be noted that *Iqbal* and *Twombly* significantly changed the pleading standard required previously. The old regime of *Conley v. Gibson* simply required pleadings to "give the defendant fair notice of what the plaintiff's claim [wa]s and the grounds upon which it rests" to survive a motion to dismiss. 355 U.S. 41, 47 (1957). The old standard mandated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Id.* at 45. The Court's opinion in *Twombly* "retired" *Conley's* "no set of facts" language and insisted on "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly* at 545. The Court demanded "enough facts to state a claim to relief that is plausible on its face." *Id.* According to a very recent and detailed discussion of the new pleading standard[7], "by establishing plausibility pleading, *Twombly* and *Iqbal* have transformed the function of a complaint from *Conley's* limited role by imposing a more demanding standard that requires a greater factual foundation than previously was required." While *Conley* accepted complaints showing the possibility of a right to relief, *Twombly* requires a pleading to show the plausibility of a claim.[8] Because of the necessity to show plausibility, the past practice of construing the complaint in the light most favorable to the pleader and drawing all inferences in his favor has been replaced by construing a pleading *against* the pleader.[9] This circuit has begun

---

[5] 129 S. Ct. 1937 (2009)
[6] 127 S. Ct. 1955 (2007)
[7] Arthur Miller, *From Conley to Twombly to Iqbal: a Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 17 (October, 2010).
[8] *Id.*
[9] *Id.*; *see generally* A. Benjamin Spencer, *Iqbal and the Slide Toward Restrictive Procedure*, 14 Lewis & Clark L. Rev. 185, 196–97 (2010) (noting that *Iqbal* clearly challenged the principle that a plaintiff's allegations are assumed to be true).

implementing the new plausibility standard. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010) (affirming dismissal of the case for failure to state a claim); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) (holding that the court was "not required to admit as true this unwarranted deduction of fact").

In a plausibility inquiry, a district court is to apply a two-step approach: first, district court judges are to distinguish factual allegations from legal conclusions, since only the former need be accepted as true; then, they must decide on the basis of the factual allegations and their "judicial experience and common sense" whether a plausible claim for relief has been shown. *Iqbal*, 129 S.Ct. at 1960. Additionally, a court is to consider if there is an innocent explanation, or an "obvious alternative" that is "more likely" than the plaintiff's inferences of wrongdoing. *Twombly* at 567, *Iqbal* at 1950.

With this new pleading standard in mind, the Court will turn to analyzing Defendant's Motion to Dismiss Plaintiffs' Amended Complaint.

### III. DISCUSSION

#### A. DEFAMATION (COUNT I)

The Florida Constitution provides that while every person may speak, write, and publish sentiments on all subjects, each person is responsible for the abuse of that right. Art. I, §4, Fla. Const.

"Defamation" is generally defined as the unprivileged publication of false statements that naturally and proximately result in an injury to another. *IBP, Inc. v. Hady Enterprises, Inc.*, 267 F. Supp. 2d 1148, 1163 (N. D. Fla. 2002), *aff'd*, 52 Fed. Appx. 487 (11th Cir. 2002); *Pica Services, Inc. v. Behringer*, 593 F. Supp. 113, 118 (S.D. Fla. 1984); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. App. 4th Dist. 1983). To establish a cause of action for

defamation, a plaintiff must show (1) that the defendant published a false statement about the plaintiff to a third party, and (2) that the falsity of the statement caused an injury to the plaintiff. *Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002); *Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530, 1537 (M.D. Fla. 1996), aff'd, 132 F.3d 1461 (11th Cir. 1997). The plaintiff must also prove damages. *Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1578 (M.D. Fla. 1996).

As to the element of falsity, the Court finds "the facts" plead troubling. Truth is a defense to the element of a false statement. *Cape Publications, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. Dist. Ct. App. 5th Dist. 2003), *review denied*, 847 So. 2d 978 (Fla. 2003). One of the allegedly false statements is that the bodies used in the Bodies Exhibition were either obtained from the "black market" or otherwise illegally obtained. Yet, as the Plaintiffs' own exhibit indicates, Premier reached a settlement with the New York Attorney General's office, according to which Premier had to state clearly on its website that it could not disprove the allegations that bodies on display came from executed prisoners,[10] or, in other words, that they were illegally obtained. It is troubling that Plaintiffs are alleging certain statements are false even though they cannot prove the statements' falsity. Under the new pleading standard, this simply is not sufficient. Consequently, Plaintiffs are directed to re-plead to show facts that indicate the falsity of the statements.

As to damages, Defendants' point is well-taken. Plaintiffs did not sufficiently show under the new plausibility standard facts that demonstrate damages to Plaintiffs, other than to say they "have suffered and will continue to suffer irreparable damage to their business and reputation."[11] This is conclusory. Therefore, Plaintiffs have to re-plead to show facts proving damages.

---

[10] Plaintiffs' Exhibit A, Document 11—1, p. 12
[11] Plaintiffs' Amended Complaint, Document 11, p. 6, §34

Consequently, Plaintiffs are directed to re-plead their Complaint to show facts which would satisfy the new *Iqbal* plausibility standard.

### B. TORTIOUS INTERFERENCE (COUNT II)

Under Count II, Plaintiffs claim two separate and distinct torts: (1) tortious interference with contract and (2) tortious interference with advantageous business relationship.

#### 1. Tortious Interference with Contract

Tortious interference is the intentional and unjustifiable interference with contractual relations of the party. *Symon v. J. Rolfe Davis, Inc.*, 245 So. 2d 278, 280 (Fla. Dist. Ct. App. 4th Dist. 1971).

Plaintiffs state that, through the alleged defamatory statements in the Broadcast, Defendants intentionally and unjustifiably interfered with Geller's employment agreement.[12] However, as Defendants state in their Motion to Dismiss, Premier *itself* admitted that Geller's resignation was not connected to the Broadcast or any related internet articles.[13] According to Premier's general counsel, Geller simply decided "it was time to retire."[14] Therefore, the complaint on its face shows Geller voluntary resigned versus got fired as a result of the alleged inflammatory statements. The Defendants' point is well-taken that, having presented that his resignation was voluntary, Geller cannot now be allowed to maintain a cause of action for tortious interference with his contract. Therefore, the Defendants' Motion to Dismiss is granted as to Geller's tortious interference with contract claim.

---

[12] Plaintiffs' Amended Complaint, Document 11, p. 6, § 40
[13] Plaintiffs' Exhibit A, Document 11, p. 11
[14] *Id.*

### 2. Tortious Interference with Advantageous Business Relationship

To prevail on a claim of intentional interference with an advantageous business relationship, the plaintiff must establish: (1) the existence of a business relationship, which need not be evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) the intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

An action for tortious interference requires a business relationship "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). This means that the Plaintiffs' complaint has to indicate which business relationships Defendants allegedly interfered with; it is not sufficient to state that Defendants interfered with the relationships between Plaintiffs and unidentified museums, galleries, art and science institutes.

Regarding damages, where there are no damages to the plaintiff, he or she has no cause of action for interference with advantageous business relationship. The same flaw is evident throughout the Plaintiffs' Complaint: the facts are not plead in accordance with the new *Iqbal* standard. Stating that Defendants interfered with Plaintiffs' relationships with unidentified museums and galleries is not sufficient, especially when Plaintiffs' *own* pleadings indicate that attendance held steady, at least in the Carnegie Science Center,[15] which contradicts the assertion that Plaintiffs suffered damages.

---

[15] Plaintiffs' Exhibit A, Document 11–1, p. 10

Therefore, Plaintiffs are directed to re-plead element one (the existence of a business relationship) and element four (damages) in accordance with the new *Iqbal* standard.

### C. CIVIL CONSPIRACY (COUNT III)

A cause of action for civil conspiracy requires: (1) an agreement between two or more parties; (2) to perform an unlawful act or a lawful act by illegal means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of acts done under the conspiracy. *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1364 (M.D. Fla. 2007); *TracFone Wireless, Inc. v. GSM Group, Inc.*, 555 F. Supp. 2d 1331, 1338 (S.D. Fla. 2008); *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1159–1160 (Fla. Dist. Ct. App. 3d Dist. 2008).

First, an agreement between two or more independent minds is an element of civil conspiracy. *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. Dist. Ct. App. 1st Dist. 1991). A corporation cannot conspire with its agent, since a corporation must act through its officers, directors, or employees, unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest. *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 965 (Fla. Dist. Ct. App. 3d Dist. 2000). Usually, both a corporation and its agent represent a single legal entity and consequently cannot conspire with each other. *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000). If von Hagens has a separate and distinct interest from Plastination and Institute of Plastination's interest, then he could have conspired with them. However, more facts have to be plead to determine this issue. Without more, this cause of action for civil conspiracy will not stand because von Hagens is an agent of Plastination and as such could not conspire with it.

Regarding damages, there is exactly the same flaw with the Plaintiffs' pleading of civil conspiracy as with their pleading of defamation. Stating that Plaintiffs "have suffered and will continue to suffer irreparable damage to their reputation, business, trade and relationships in Florida and elsewhere," without more, is simply not sufficient under the new pleading standard required by *Iqbal*. Consequently, Plaintiffs are directed to re-plead facts demonstrating damages.

Therefore, Plaintiffs are directed to re-plead (1) element one (nature of the parties' interest) to show if von Hagens had a separate interest from Plastination and Institute of Plastination, and (2) element four (damages). Accordingly, it is

**ORDERED** that the Motion to Dismiss (Doc. 22) and the Motion to Dismiss (Doc. 40) are granted with prejudice as to Count II and Tortious Interference with Contract and with leave to amend as to the remainder of the complaint. Plaintiffs have ten (10) days from this date to file an amended complaint as to all Defendants.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 23rd day of November, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Parties and Counsel of Record