UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARNIE GELLER, DR. HONGJIN SUI,
DALIAN HOFFEN BIO-TECHNIQUE
CO., LTD., and DALIAN MEDICAL
UNIVERSITY PLASTINATION CO., LTD.,

    Plaintiffs,

v.                                                CASE NO.: 08:10-cv-01688-EAK-AEP

GUNTHER VON HAGENS,
PLASTINATION COMPANY, INC.,
and INSTITUTE FOR PLASTINATION

    Defendants.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant, Dr. Gunther von Hagens' ("von Hagens"), Motion to Dismiss (Doc. 57) for lack of personal jurisdiction and the response in opposition by the Plaintiffs.

## BACKGROUND AND PROCEDURAL HISTORY

Arnie Geller, Dr. Hongjin Sui, Dalian Hoffen Bio-Technique Co. Ltd., and Dalian Medical University Plastination Co., Ltd. (collectively "Plaintiffs") brought suit against Dr. Gunther von Hagens, Plastination Company, Inc. and the Institute for Plastination (collectively "Defendants") pursuant to 28 U.S.C. § 1332, alleging two counts against the Defendants: Count I is for defamation; and Count II is for tortious interference.

The parties to this suit are involved in the business of preserving and exhibiting plastinated bodies. The process of plastination makes it possible to preserve biotic specimens, including organs as well as entire human bodies. Dr. von Hagens, Plastination Company, Inc., ("PCI"), and the Institute for Plastination ("IfP") are involved in the production and promotion of "Body Worlds," which is a traveling exhibit showing plastinated bodies. Plaintiff Arnie Geller was President, CEO and Chairman of another company, Premier, which, like Defendant Plastination, was involved in the production and operation of another traveling exhibit showing plastinated bodies – "Bodies ... The Exhibition." Accordingly, Plastination and Premier were each other's competitors.

Both competitors promoted their exhibitions in the state of Florida. The "Body Worlds" exhibition was held in Tampa for six months in 2009. Similarly, "Bodies ... The Exhibition" featured plastinated bodies in museums in Tampa, Miami, and Fort Lauderdale between 2005 and 2008. Further, Premier is a Florida corporation and Plaintiff, Arnie Geller, is a resident of Palm Beach County.

In the Second Amended Complaint, Plaintiffs allege that von Hagens directed a former employee and agent of the Defendants, Deqiang Sun ("Sun"), to make false statements to an investigative journalist of the television network, ABC; these false statements involved the Plaintiffs' plastination operations. Plaintiffs further contend that the source of the false information was von Hagens. On February 15, 2008, a nationally televised "investigative news story" aired on the ABC program, 20/20, and, the Plaintiffs allege published

inflammatory and false statements about Plaintiffs. In their Second Amended Complaint, Plaintiffs set out six specific and allegedly defamatory statements that were aired on the Broadcast and published on the internet and for which von Hagens is allegedly the source: (1) the bodies for the "Bodies ... the Exhibition" were purchased on China's "black market," and were bodies of tortured, abused and executed Chinese prisoners; (2) dealers made "body runs" to the "black market" and purchased bodies which included executed prisoners for approximately $200-300; (3) executed bodies were located in a rotting warehouse in northern China; (4) von Hagens stated it was quite normal that executed prisoners were used for anatomical purposes in China; (5) the bodies were obtained illegally; and (6) the bodies which were either obtained from the "black market" or otherwise illegally obtained were used in "Bodies ... the Exhibition."

Plaintiffs allege that these statements were made with the intent to economically harm them. Plaintiffs further maintain that as a result of the statements they have suffered financial damages, and have been injured in their profession, trade and business reputation.

Defendant von Hagens now moves to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). He asserts the absence of personal jurisdiction under the Florida long-arm statute, Section 48.193, Florida Statutes, as well as under the Due Process Clause of the U.S. Constitution. In response, Plaintiffs assert that both the long-arm statute and the Due Process Clause support personal jurisdiction in Florida.

## DISCUSSION

A determination as to personal jurisdiction requires an analysis (1) of whether the state long-arm statute authorizes personal jurisdiction and (2) of whether the defendant possesses "minimum contacts" with the forum state sufficient to comport with "traditional notions of fair play and substantial justice." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166-67 (11th Cir. 2005) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### 1. Section 48.193, Florida Statutes

Section 48.193 provides that:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
. . .

(b) Committing a tortious act within this state.

The Eleventh Circuit interprets Section 48.193 (1)(b) as applicable to defendants who have committed tortious acts outside the state that cause injury in Florida. Posner v. Essex Ins. Co., Ltd., 178 F. 3d 1209, 1217 (11th Cir. 1999). Thus, "[t]he alleged tortfeasor's physical presence [in Florida] is not required." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168 (11th Cir. 2005) (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)). Further, a tortious act committed by a non-resident defendant is sufficient for the establishment of § 48.193 (1)(b) when the injurious material is circulated or

published within the state, whether or not the defendant is the actual publisher of the alleged tortious statement. Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir. 1990) (finding that the requirements of the Florida long-arm statute were met when a defendant's alleged libelous statement was made to a reporter in California and subsequently printed in a magazine that was distributed in Florida). Similarly, posting allegedly defamatory material about a Florida resident on a web site which is both "accessible in Florida and accessed in Florida" constitutes a tortious act sufficient to support personal jurisdiction under § 48.193(1)(b). Internet Solutions Corp. v. Marshall, 611 F.3d 1368, 1370-1371 (11th Cir. 2010) (citing Internet Solutions Corp. v. Marshall, 39 So. 3d 1201 (Fla. 2010) (finding that "[b]y posting allegedly defamatory material on the [w]eb about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida.")).

In moving to dismiss, von Hagens argues that § 48.193(1)(b) is not satisfied with regard to his defamation count because he did not commit a tortious act directed toward the Plaintiffs. Dr. von Hagens contends that the only alleged defamatory statement that he, himself, made: that "it is quite normal that executed prisoners are used for anatomical purposes in China," was directed toward the Chinese anatomical community and prison system, not the Plaintiffs. In response, the Plaintiffs rely on Madera v. Hall and argue that personal jurisdiction is proper because von Hagens committed an intentional tort directed at Florida when he directed Sun to make false statements to ABC regarding the Plaintiffs' operations. Plaintiffs assert that ABC is a national network and von

Hagens was well aware that that the 20/20 broadcast would be aired on U.S. television, including within the State of Florida. Finally, Plaintiffs contend that at the time of the broadcast, in addition to Premier being a Florida corporation and Geller residing in Palm Beach County, the plaintiffs possessed a reputation in Florida and conducted business there through the exhibitions of "Bodies ... the Exhibition." The Plaintiffs allege that they have suffered financial damages, as well as injury to their profession trade and business reputation as a result of the defamatory statements broadcasted on 20/20.

Section 48.193(1) encompasses acts "[done] personally or through an agent." Thus § 48.193(1)(b) applies to tortious acts committed by the defendant himself or by a person acting as his agent. In the Second Amended Complaint, the plaintiffs allege that Sun was "an agent and/or employee, or former employee of the defendants." This is denied by von Hagens in his Declaration (Doc. 57-1), contending that Sun has never been his agent, employee, or former employee. The Eleventh Circuit maintains, however, "the district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (quoting Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)). Additionally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. Id. Therefore, at this stage of the proceedings, the Court will accept the facts as alleged by the plaintiffs, that Sun was an agent of von Hagens, as true.

In this instance, through Sun, von Hagens allegedly directed the false information to ABC with the intent that it be broadcasted nationally. In airing these statements, von Hagens allegedly harmed the Plaintiffs' reputation in each forum in which their plastinated works are exhibited, including in Florida. In Madera and Internet Solutions, where (respectively) defamatory statements were made accessible to Florida residents through a magazine distributed in Florida and also through a website that could be accessed in Florida, the Eleventh Circuit found a sufficient basis for asserting jurisdiction under Section 48.193(1)(b). Accordingly, jurisdiction will be asserted here since the allegedly defamatory statements that harmed the Plaintiffs were broadcasted nationally and, thus, accessible to television viewers in Florida.

2. Due Process & Minimum Contacts

In addition to personal jurisdiction under Section 48.193, the plaintiffs must show that the defendants possess "minimum contacts" with Florida sufficient to comport with "traditional notions of fair play and substantial justice." New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 903-904 (M.D. Fla. 2007).

> Jurisdiction may be constitutionally asserted over the nonresident defendant whenever he has by his own purposeful conduct created a "substantial connection" with the forum state. The Court has made clear, however, that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts over the forum.

Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008). Thus, personal jurisdiction over defendants may be based on the effects of their conduct in the forum state. Calder v. Jones, 465 U.S. 783, 789 (1984).

Accordingly, if "a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met and the defendant should anticipate being haled into that forum." Fenton, 510 F. Supp. 2d at 904.

In the present case, von Hagens does not have an office in Florida, nor does he own or lease property in Florida. Additionally, von Hagens has no bank accounts in Florida and has never paid taxes there. In his Declaration (Doc. 57-1), von Hagens asserts that his contacts with Florida are limited to a personal trip in 1988 as well as his co-authoring of a book in 1990 with two University of Florida professors. However, by directing Sun to make false statements about the Plaintiffs' operations to ABC investigative reporters, von Hagens allegedly committed an intentional tort. In doing so, von Hagens intended that defamatory information to be broadcasted nationwide and, thus, directed at every state in which the Plaintiffs' plastinated displays might be exhibited.

Due to the far-reaching nature of the 20/20 broadcast, von Hagens undoubtedly intended to reach a vast audience, including viewers in Florida. In addition to Premier being a Florida corporation and Geller residing in Palm Beach County, the plaintiffs possess a reputation in Florida and conduct business there through "Bodies ... the Exhibition." The plaintiff's allege that they have suffered financial damages, as well as injury to their profession trade and business reputation as a result of the defamatory statements. Under Licciardello, von Hagen's alleged tortious

8

conduct, which von Hagens directed at the plaintiffs and which allegedly caused injury to the plaintiffs in Florida, establishes von Hagens' minimum contacts with Florida.

Further, asserting jurisdiction comports with traditional notions of fair play and substantial justice. Florida possesses a substantial interest in adjudicating a dispute over alleged conduct that purportedly caused an injury within the state. The plaintiff's need not travel to the defendant's state of residence in order to obtain a remedy. See Calder, 465 U.S. at 790. Accordingly, it is

**ORDERED** that von Hagens' Federal Rules of Civil Procedure 12(b)(2) Motion to Dismiss (Doc. 57) be **DENIED** and the Defendant is directed to answer the complaint within ten days of this order.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 6th day of June, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All parties and counsel of record.